OPINION. Van Fossan, Judge: It is agreed that the gain of $412,459.39 realized upon receipt of $428,750 in 1942 from private insurers upon the loss of the Edward is includible in 1942 income. The question to be determined is whether the gain realized upon the amounts received from WSA is includible in 1942 income, as contended by respondent. . The respondent argues that WSA never denied liability under the charters; that there was no contest between petitioner and WSA and that the latter was merely withholding payment during a clarification period; that subsequent payments by WSA to petitioner of war risk insurance for the three vessels involved were made under and pursuant to the charters; and, hence, the gain was accruable in 1942. The petitioner contends that, although its right to compensation on some basis was admitted, there was no- way, by investigation of facts or records, by reference to an established statutory or contract formula, or otherwise, by which the petitioner or WSA could, at the end of 1942, determine with reasonable accuracy the amount of compensation for loss to which petitioner was entitled. It is further argued that the amount of compensation was not reasonably determinable until Í944, when WSA finally determined the amount and paid it accordingly. The record discloses that there was a serious controversy between WSA and the Comptroller General. The respondent concedes that there was such a controversy with respect to the question of valuation between WSA and the Comptroller General, and that each of them carried their controversy to the appropriate committees of Congress throughout 1943 and maintained his position until the President, by Executive order, established the Advisory Board on Just Compensation; It is not necessary to discuss the controversy in detail or the conflicting views of WSA and the Comptroller General. It is significant that, although the charters fixed a valuation of $65 per dead-weight ton, plus a bonus of $20 per dead-weight ton, the Administrator, as a result of the controversy, determined that it was incumbent upon him to apply the Comptroller General’s ruling. In the notice of December 17, 1942, the Administrator informed petitioner to that effect, and, further, that no payments for total loss of vessels from marine or war risk assumed by WSA would Be made except in cases where the value of the vessel as determined by the Administrator did not exceed the value of the same vessel on September 8, 1939. The notice further stated that, in cases where the withholding of payment resulted in hardship to any owner: * * * the Administrator is prepared to determine the value of such vessel in accordance with the decision of the Comptroller General of the United States upon request for such determination from the owner, and to tender the amount so determined to the owner. The owner would then have the election of accepting the amount tendered in full settlement or of accepting 75 per cent thereof and instituting suit in the appropriate court for just compensation under section 902. The tender of payment of some undetermined amount was made only to those to whom the withholding of all payment as provided in the charters would result in hardship. Furthermore, the submission by WSA to owners of lost vessels of an election to accept either some indefinite sum, later to be determined by it upon request, “in full settlement,” or to take part payment on the same basis and institute suit for just compensation, is not an unconditional offer of payment upon which an accrual of income could be based. In substance and effect, the notice, so far as this petitioner is concerned, was tantamount to a denial of liability for the payment of any amount under its charters for the loss of its three vessels. It may be noted also that it is stated in the notice of December 17,1942, that consideration was being given to the desirability of canceling all or certain classes of outstanding charters. An employee of the United States Maritime Commission, successor to WSA, testified on behalf of respondent that on May 20,1943, a form letter or bulletin was sent to petitioner tendering $20 per ton in payment on account of the total loss of the Mary and the Paul, or 75 per cent of their valuation computed under General Order No. 24, which provided for a cost less depreciation basis, subject to a minimum of $20 per ton; that on July 16, 1943, a similar letter was sent with respect to the Edward; and that later, on October 15, 1943, another form letter was sent to petitioner making a tender of $40 per ton on dry cargo vessels, in which category petitioner’s three vessels fell. He further testified that the tenders were not offers of settlement; that no action on the part of the owners was required, but that no payments were made because “there would be no sense in having the owner sign a voucher, if, after all that large amount of administrative work, they were to be rejected. Other owners who wanted payment on account would then have to wait all that additional time.” It would appear that such form letters were supplemental to the notice of December 17, 1942, subject to its terms and conditions, and issued to indicate the amount which WSA considered to be the value as of September 8, 1939, which the Comptroller General would approve. In any event, since no payments followed upon such letters, it is apparent that the so-called tenders or offers of WSA were not accepted by petitioner and that they were not the expression of an intent to make payments on account of a conceded or possible liability greater in amount. Although the case of American Hotels Corporation v. Commissioner, 134 Fed. (2d) 817, affirming 46 B. T. A. 629, involved the accrual of a liability of $25,000 and its deduction in 1937 as an expense, what the court stated in its opinion in affirming the decision of the Board of Tax Appeals disallowing the deduction is equally apposite herein: * * * when, as here, the taxpayer keeps its hooks on an accrual basis, such a deduction can be taken only for the taxable year in which the expense was “incurred.” That means that there must be some reasonably clear definitization, within that year-, of the amount of the expenses. Whether or not there was, depends upon the peculiar facts of each particular case. We think that here there was substantial evidence to sustain the finding of the Tax Court that there was no such definitization in the taxable year 1937. In that year the taxpayer offered to pay $4,200. Had it then said unconditionally that it would pay that sum, leaving open for further negotiations any greater liability, perhaps it could have deducted $4,200 for 1937. But that it did not do; it offered that amount only on condition that it be released in full. The amount claimed by Metropolitan was $42,000, and the taxpayer, although it did not so advise Metropolitan, was then prepared to go even beyond that limit; but taxpayer, in 1937, did not know how far it would go; it was ready to pay anything from $4,200 up to an undetermined maximum. In fact, in 1938, it agreed to pay $25,000. But, as there was no expression in 1937 of a willingness unconditionally to pay any definite amount, we cannot say that the Tax Court was not justified in finding that no expense was then incurred. Herein, in December 1942, after petitioner had filed its claims with WSA under its charters for the loss of its three vessels, WSA refused to make any payment whatsoever to owners of vessels which had been lost except to those to whom its refusal would result in hardship, and as to those it made no unconditional offer of a definite amount. There was no expression by WSA in 1942 or shortly thereafter of a willingness unconditionally to pay a definite amount, whether on account or in full settlement. Petitioner did not know the amount of the compensation it would receive from WSA until it received its vouchers in January 1944 covering the Paul and the Mary, and in June 1944, covering the Edward. It is apparent that as soon as WSA decided actually to pay the claims it sent out its vouchers, with the request to sign and return the same. Shortly after petitioner returned the vouchers it received payment, exclusive of any amount' for delay in payment. In William Justin Petit, 8 T. C. 228, it is stated: When a taxpayer is on the accrual basis it is the right to receive the income and not the actual receipt that determines the inclusion of the amount in gross income. Spring City Foundry Co. v. Commissioner, 292 U. S. 182. However, in order for items to be accrued as income the event must occur which determines the amount due. When the amount to be received depends upon a contingency or future events, it is not to be accrued until such contingency or the events have occurred and fixed with reasonable certainty the fact and amount of income. U. S. Cartridge Co. v. United States, 284 U. S. 511. To the same effect see Patrick McGuirl, Inc. v. Commissioner, 74 Fed. (2d) 729; certiorari denied, 295 U. S. 748. To ascertain with any degree of certainty the amount it would receive from WSA, petitioner was required to await the outcome of the controversy between WSA and the Comptroller General and the further action of WSA, or to institute suit for just compensation. Since the amount to be received by petitioner depended upon events which did not occur in 1942, and over which petitioner had no control, it is our conclusion that the gains upon the amounts received from WSA were not accruable in 1942 and, hence, not in-cludible in 1942 income. The respondent relies in particular upon Continental Tie & Lumber Co. v. Burnet, 286 U. S. 290; Automobile Insurance Co. v. Commissioner, 72 Fed. (2d) 265; Georgia School-Book Depository, Inc., 1 T. C. 463; and Dumari Textile Co., 47 B. T. A. 639; affd., 142 Fed. (2d) 897. These cases are clearly distinguishable upon the facts. In all of them the amount of income was certain or ascertainable with a fair degree of accuracy. Such is not true in the instant case. Reviewed by the Court. Decision will be entered under Bule 50.