HENRY HESS CO., PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15870, 19457.[1]  Promulgated June 18, 1951.

*Arthur H. Kent, Esq.,* and *Valentine Brookes, Esq.,* for the petitioners.

*W. J. McFarland, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Arthur B. Cahill, Docket Nos. 15871. 19456; Frank C. Lawler, Docket Nos. 15872, 19458; Louis Stewart, Docket Nos. 15873. 19459: Eleanor de Guigne, Docket Nos. 15874, 19461; Jane de Tristan, Docket Nos. 15875. 19478: Edwin A. Christenson. Docket No. 15876: Charles E. Christenson. Docket No. 15877: Imogene Chandler. Docket Nos. 15878, 19607; Eleanor L. Cates. Docket Nos. 15888. 19460; Louis S. Cates, Docket Nos. 15889, 19516; Edna C. Hitchcock, Docket Nos. 15904. 19462.

OPINION.

VAN FOSSAN, *Judge:* the first matter of moment in this case is the determination whether or not Christenson Steamship Company realized gain in the year 1942 from the requisition for title in that year by the War Shipping Administration of the S. S. Jane Christenson. There is little dispute as to the facts but there was a wide divergence between the parties in the conclusions drawn therefrom. Petitioners contend that the amount of just compensation to be paid for the taking of the vessel was not known and could not be reasonably estimated or ascertained in 1942, thereby preventing any accrual on the books of Christenson. They rely heavily on our decision in *Luckenbach Steamship Co.*, 9 T. C. 662, in which case, as to this year, we had the same question, the same year, the same controversy, and, in all critical respects, the same or closely related facts. After careful consideration, we are of the opinion that the *Luckenbach* case is controlling.

In the cited case we held that the ruling of the Supreme Court in *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290, on which respondent relies heavily here, and other cases of similar purport, were distinguishable and do not impel a contrary result. The same considerations are present here. The amount of just compensation to be received was not fixed or reasonably ascertainable in the year 1942. It is not enough to state that the Fifth Amendment to

the Federal Constitution guarantees just compensation and thereby fixes taxpayer's right. To this it might, with equal assurance, be rejoined that under our system of jurisprudence and the law as adjudicated by all American courts, every litigant is guaranteed ultimate justice or "equal justice under law." These principles are basic in our system of government. So to state, however, does not devitalize the considerations leading to the holding in innumerable cases that before an amount can be accrued, not only must the right to receive the amount be fixed, but the amount must be reasonably ascertainable.

We hold on the facts that no amount was fixed or reasonably ascertainable by Christenson in 1942 and that, therefore, respondent erred in taxing any of the gain as income in that year. *Luckenbach Steamship Co., supra; United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88. See *Apex Electrical Manufacturing Co.*, 16 T. C. 1171. Since there were no taxes due for 1942, it follows that petitioners had no transferee liability in that year.

The next question is whether the Christenson Steamship Company realized taxable gain in the years 1943 and 1944 on account of the requisition for title of the S. S. Jane Christenson. This issue is readily disposed of.

Petitioners argue that Christenson having assigned the inchoate claim to just compensation in 1942 to its stockholder (Sudden & Christenson) and the stockholder having distributed all assets, including the claim, to petitioners, Christenson had no right or interest in such claim thereafter and accordingly had no beneficial interest in the payments made in 1943 and 1944. They contend that the corporation ceased to exist on dissolution. From this they argue that the corporation was not taxable on the payments so made. We disagree. The corporation was not dead but moribund. Under the law of California, as in most states, a dissolved corporation is continued after such dissolution "for the purpose of winding up its affairs," etc. (sections 399, et seq., Civil Code of California). It is specifically provided that the directors of such dissolved corporations shall have power, *inter alia*, to sue in the name of the corporation, to carry out contracts, collect, pay, compromise and settle debts and claims, sell the assets and "to do any and all things in the name of the corporation which may be proper and convenient for the purposes of winding up, settling and liquidating the affairs of the corporation." Here there is no doubt of the continuing existence of the corporation. The liquidating directors frequently employed the corporate name, wrote letters, executed agreements and received payments in the name of Christenson, and otherwise, in many respects, negatived petitioners' present contention throughout the years 1943 and 1944. The waiver

agreement, signed by all of the petitioners, authorized payment of the claims to Christenson and the two payments of $170,680 each in 1943 and the final payment of $248,508.42 in 1944 were all made in the name of Christenson Steamship Company. The closing bill of sale was executed in September 1944 in the name of Christenson Steamship Company by A. B. Cahill, as president, and F. C. Lawler, as secretary. This document recites, in part, "Christenson Steamship Company, a corporation, organized and existing pursuant to the laws of the State of California." Similar language was used in various other documents executed in behalf of the corporation during 1943 and 1944. All of the payments received from WSA in the name of Christenson Steamship Company were promptly delivered to petitioners.

It is the holding of this Court that Christenson Steamship Company, although dissolved, was nonetheless existing for the purpose of winding up its affairs, chief among which was the collection in its own name of the payments on account of the claim for just compensation and the distribution of the proceeds to petitioners. In such capacity it received in its own name payments aggregating $583,180, with interest of $6,688.42. The excess of the sums paid over the adjusted basis of the S. S. Jane Christenson to the corporation was $552,598.68, which represented taxable gain to the corporation. Respondent assessed taxes based on such sum against the corporation.

We thus find no merit in petitioners' contention that the gain was not taxable to Christenson Steamship Company in 1943 and 1944 when it received payment and distributed the same through its sole stockholder to petitioners. A corporation which possessed enough life to perform all of the above functions, and many others not above listed, possessed sufficient vitality to be taxable on the gains incident to such winding up of its affairs. See *Commissioner* v. *Court Holding Co.*, 324 U. S. 331, affirming 2 T. C. 531, and *Fairfield Steamship Corporation*, 5 T. C. 566, aff'd., 157 F. 2d 321. Taxable gain may not be avoided under the circumstances here present.

Petitioners advance as a third contention that the petitioners are not liable as transferees in respect to 1943 and 1944. They admit transferee liability as to any taxes due for 1942. We have considered this argument carefully and have consulted the cases cited but we are not convinced that petitioners' position is in any sense tenable. The rights of the parties are to be fixed by the realities of the situations involved, not by blind reference to the calendar. See *Commissioner* v. *Court Holding Co.*, supra, and *Higgins* v. *Smith*, 308 U. S. 473. The stipulated facts reveal that the assets of Sudden & Christenson were distributed during the years 1942, 1943, and 1944, complete liquidation of the corporation being accomplished by December 1944. These distributions included all of the assets received by the corporation

from Christenson and the payments of just compensation for the S. S. Jane Christenson, leaving Sudden & Christenson without any assets with which to satisfy the liability herein asserted against Christenson Steamship Company. It was further stipulated that "Each of the petitioners received cash and other property of the transferor, Christenson Steamship Company, a corporation, by the transfers described [above], having a fair market value equivalent to the transferee liability determined by the respondent against each petitioner herein for the deficiences in taxes heretofore determined by the respondent to be due from the said transferor, together with interest thereon as provided by law." These distributions occurred throughout the years 1942, 1943, and 1944. We are unable, in the face of these stipulated facts, to perceive any merit in petitioners' argument that they are not liable as transferees as to the years 1943 and 1944. The petitioners are accordingly liable as transferees for all unpaid taxes falling due in the years 1943 and 1944.

There remains for consideration the question whether Christenson was liable, in the fiscal years 1943 and 1944, for the declared value excess-profits taxes (section 600, I. R. C.) The determination of this issue depends on whether Christenson was "carrying on or doing business" in 1943 and 1944 and, accordingly, whether it was liable for capital stock tax under section 1200, I. R. C. The answer to the stated question is to be found in the facts. There would seem to be no doubt that Christenson was "carrying on or doing business" during the year ended June 30, 1943. During part of this year it was engaged in operating its steamship line and later in making distribution to its stockholder. We hold that Christenson was doing business in the year in question and accordingly that petitioners are liable as transferees for declared value excess-profits taxes due for 1943. The facts are different as to 1944. While we have held above that Chistenson was still in existence during the year 1944 and received income on which it is taxable, it does not necessarily follow that it was "carrying on or doing business" under section 1200, I. R. C. Different criteria apply. We are of the opinion, and hold, that Christenson was not "carrying on or doing business" in 1944 as that phrase is used in section 1200, I. R. C., and accordingly that for the year 1944 there is no liability on petitioners as transferees for declared value excess-profits taxes.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

Turner, *J.*, dissenting: That in the case of a taxpayer keeping its accounts on an accrual basis there is an accrual, for income tax purposes, when the right to receive a payment becomes fixed, is settled

law. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. Here, however, the Court, following its prior opinion in *Luckenbach Steamship Co.*, 9 T. C. 662, holds that the pronouncements of the Supreme Court in the *Spring City Foundry Co.* case are not controlling, for the reason that the amount of just compensation to be paid to the Christenson Steamship Company for the S. S. Jane Christenson was not known and could not be reasonably estimated or ascertained in 1942, when the vessel was requisitioned by the War Shipping Administration. With all due respect to the majority here, it is my opinion that the effect of the holding, if permitted to stand, is merely a perpetuation of error committed in the *Lukenbach* case. To say that no amount can be reasonably estimated merely because the exact amount is not known at the time the right to receive the payment becomes fixed and cannot be estimated with exactness, and there is therefore no accrual, is, it seems to me, an undue restriction of the ruling in the *Spring City Foundry Co.* case and the ignoring of the declarations of the Supreme Court in *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290, and *United States* v. *Anderson*, 269 U. S. 422. In my opinion, these cases are not effectively and adequately distinguished in principle from the *Luckenbach* case or the instant case by mere fiat that they "are clearly distinguishable upon the facts."

We do not have here a case where there is no fixed or determined right to receive payment, as was true in *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281, *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, and *Lucas* v. *American Code Co.*, 280 U. S. 445. To say that no amount was known or could be reasonably estimated or ascertained at the time of the taking of the vessel in 1942, is to turn one's back on the facts or to play the ostrich and stick one's head in the sand. Regardless of the differences between the General Accounting Office and the War Shipping Administration, there was at all times an acknowledgment on the part of the United States that the Christenson Steamship Company was entitled to receive an amount equal to the value of the ship on September 8, 1939. This case, on its facts, is no different from cases arising daily throughout the business world where the right to payment becomes fixed but the amount is not definitely known and must await ultimate work-out or computation. In such cases, it would be wholly unrealistic and would result in a complete distortion of income and the financial condition of the participants using an accrual method of accounting to fail or refuse to enter an estimate of the amount of the payment upon their books, particularly where there is no question but that a substantial amount is owing and will be paid. The fact that the estimate, even though made objectively and resulting from the exercise

of the best judgment possible, will in all likelihood vary from the amount ultimately computed or determined, is no excuse and does not relieve a taxpayer from entering the results of the exercise of such judgment upon its books; and the fact that the ultimate work-out may be, and probably will be, different and require proper adjusting entries on the books in the year of ultimate determination or payment, not only is no bar to accrual, but rather, is a common and normal occurrence.

As to the amount which properly should have been accrued, it is sufficient for the purposes of this dissent merely to point out that even the Comptroller General acknowledged liability of the United States at the time the S. S. Jane Christenson was requisitioned, in an amount equal to the value of the ship on September 8, 1939, and that Cahill, who took over on November 17, 1942, as "Managing Owner" for Christenson Steamship Company, did estimate and accrue on his books a receivable of $510,000 as the amount due and owing for the ship as of the date requisitioned. As some indication that this amount was regarded as conservative, it may be noted that throughout 1943 the petitioner's representatives were claiming $640,000 as the amount due.

In further refutation of the conclusion that it was not reasonable to ascertain and accrue any amount in 1942, it is to me of some significance that as early as July 25, 1943, the Christenson Steamship Company was advised that it would be privileged at that time to accept payments based on the deadweight tonnage of the vessel, or up to 75 per cent of the value which had been computed under a general order of the Maritime Commission, whichever was higher or, without any prejudice to its rights to continue its demands for the payment of an amount greater than the value of the ship at September 8, 1939.

For the reasons stated, it is my opinion that the pronouncements by the Court of the law in this case and its application of the law to the facts herein are in error.

HILL, DISNEY, and HARRON, *JJ.*, agree with this dissent.