OPINION. MulRONet, Judge: The primary question in this case is whether the gain on the sale of the property known as 82-84 Broad Street, Hew York, Hew York, by the Kramers is taxable to Merkra. As shown in our Findings of Fact, Merkra leased this property in 1929 to Marex Realty Corporation for a 21-year term with renewal option rights, and the lease further provided the lessee had the option to purchase the property at any time before January 31, 1951, provided that 6 months’ notice of intention to exercise the option was given. The Marex Realty Corporation suffered financial difficulties in 1932 and a reorganization proceeding was instituted under State law which resulted in the formation of a new corporation known as 80 Broad Street, Inc. The latter corporation took title to the assets of Marex Realty Corporation, amongst them being the rights under the aforementioned lease. In May of 1950 Merkra was dissolved and its assets, including the property at 82-84 Broad Street, Hew York, Hew York, were distributed to its four shareholders. It fairly appears the distribution in kind was made after Merkra learned the option would probably be exercised and in order to escape heavier taxes which would result if Merkra then held title. 80 Broad Street, Inc., did decide to exercise the option to purchase the building and in June of 1950 it gave written notice to that effect to the Kramers who were then the holders of the title to the property, the notice fixing the closing date in January 1951. The transfer was consummated in January 1951 by the Kramers deeding the property to 80 Broad Street, Inc., and the latter paying them $1,000,000. The Kramers, who are the peti-doners in the other cases, admit they would be liable as transferees if it be held the gain was taxable to Merkra. Respondent relies upon Commissioner v. Court Holding Co., 324 U. S. 331, affirming Court Holding Co., 2 T. C. 531. In the cited case a husband and wife owned all of the stock of a corporation and they orally agreed with a prospective purchaser to sell an apartment building, which was the corporation’s sole asset, at an agreed price. They accepted a downpayment of $1,000 but when they met with the prospective purchasers for execution of the formal sales contract they were informed that a sale by the corporation would cause heavy income taxes. ISTo contract of sale was then executed but the stockholders immediately liquidated the corporation, with a distribution of the assets in kind to the stockholders. The stockholders then, as individuals, completed the sale and applied the original downpayment made to them as representatives of the corporation, to the purchase price. The Supreme Court in its opinion in the Court Holding Co. case approved the action of the Tax Court in viewing the transaction as a whole from the commencement of negotiations to the consummation of the sale and held, under all of the facts, the Tax Court’s determination that the corporation had not abandoned the sales negotiations and the sale by the shareholders was in substance the sale of the corporation, was supported by the evidence. The rule of the Court Holding Co. case does not mean that all sales of corporate property by the shareholders shortly after liquidation and distribution in kind are to be attributed to the corporation. United States v. Cumberland Public Service Co., 338 U. S. 451; Amos L. Beaty & Co., 14 T. C. 52; Frank E. Gilman, 14 T. C. 833; Doyle Hosiery Corporation, 17 T. C. 641; Steubenville Bridge Co., 11 T. C. 789; Oahu Beach & Country Homes, Ltd., 17 T. C. 1472. In the Cumberland case it was stated “While the distinction between sales by a corporation as compared with distribution in kind followed by shareholder sales may be particularly shadowy and artificial when the corporation is closely held, Congress has chosen to recognize such a distinction for tax purposes.” In Steubenville Bridge Co., supra, we reviewed many of the prior decisions of this and other courts and announced the “basic question” tp be “as to who made the sale.” We approved the rule of Wichita Terminal Elevator Co., 6 T. C. 1158, affd. 162 F. 2d 513, and quoted from that case as follows: If, in fact, the sale of petitioner’s elevator properties was conceived and negotiated by its president, acting in its behalf prior to its dissolution, and such sale was carried out through an arrangement whereby petitioner was dissolved and the properties to be sold were conveyed to a liquidating agent or to its stockholders and the formal contract to sell was executed by the party or parties then holding legal title, such sale was, for tax purposes, made by the corporation. We went on in the Steubenville ease to review some of the cases where it was held the sale would not be attributable to the corporation and we drew this rule from such authorities: On the other hand, where the sale has been made by the stockholders after liquidation has been initiated and with no contractual obligations assumed by the corporation prior to the negotiation of liquidation, the courts have generally taxed the resulting gain to the stockholders. * * * It is not necessary to reconcile all of the litigated situations where it has been held the stockholders’ sales after liquidation in kind were or were not attributable to the corporation. Certain it is from all of the authorities the sale cannot be attributed to the corporation unless the corporation has, while still the owner of the property, carried on negotiations looking toward a sale of the property, and in most cases the negotiations must have culminated in some sort of sales agreement or understanding so it can be said the later transfer by the stockholders was actually pursuant to the earlier bargain struck[2] by the corporation — and the dissolution and distribution in kind was merely a device employed to carry out the corporation’s agreement or understanding. Here there were no negotiations with Merkra and 80 Broad Street, Inc., looking toward a sale of the property by Merkra. Respondent argues the required negotiations by Merkra for a sale of the property can be found in the evidence of the negotiations with Marex in 1929 for the lease which contained the option to purchase. But these negotiations were in no sense negotiations by Merkra looking toward a sale of its property. They were negotiations by Merkra to rent its property. They culminated in a lease of the property for a first period of 21 years with granted renewal rights to the lessee for two following periods of 21 years each. Before one could say there were negotiations by Merkra looking toward a sale of the property, the evidence should show Merkra desired to sell and the other party to the negotiations desired to purchase. The purchase option clause was placed in the lease at the request of the lessee but one of the Kramers who participated in the lease negotiations said this was an “afterthought” and he said the figure set ($1,000,000) was “fantastic.” This is believable when it is seen Merkra had acquired the building 5 months before for approximately $295,000. We recognize there could be situations where the giving of an option to buy is but a step in a planned sale. Meurer Steel Barrel Co v. Commissioner, 144 F. 2d 282, cited by respondent. That is not this case. Here the giving of the long-time option to buy as part of the lease contract does not represent sales negotiations. It was no more than the reply of an owner pressed to place a price on property he is anxious to rent and reluctant to sell. The option is given to one who desires to rent but thinks some day he might want to buy. The option price was not the result of negotiations between parties who offer to buy and sell. It was merely a figure fixed by the owner that it would accept if offered within the next 21 years. There were no negotiations for a sale of the property, within the rule of the Court Holding Co. case, and such negotiations as were had did not result in any contract of sale on the part of Merkra before liquidation. We conclude the sale was not made by Merkra; that it was made by the individuals who held title to the property as co-owners and that the sale should not be attributed to Merkra. Our holding for the petitioners on the primary issue disposes of the second issue. After the dissolution the building was operated as a joint venture by the shareholders and each reported his distributive share of the post-liquidation income up to the closing date when the property was transferred. Respondent’s argument that the post-liquidation rents were actually corporate rents of Merkra is based enl irely on his theory that the sale was attributable to Merkra. Since we hold the sale was not attributable to Merkra the argument falls. Reviewed by the Court. Decisions will ~be entered under Rule 50. Teetjens, J., concurs in the result. In Fairfield S. S. Corporation v. Commissioner, 157 F. 2d 321, Judge Learned Hand said Commissioner v. Court Holding Co., 324 U. S. 331, “turned upon the fact that all the preliminary negotiations had been made expressly with the corporation; and that it was only after the bargain had been struck, that'the device of a liquidation was brought in as deus ex machine.”