JUHL SMITH and VERA SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 6499-73.
United States Tax Court
T.C. Memo 1975-153; 1975 Tax Ct. Memo LEXIS 220; 34 T.C.M. (CCH) 704; T.C.M. (RIA) 750153; May 20, 1975, Filed Charles E. Wright, for the petitioners. Robert J. Murray, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1968 and 1969 in the amounts of $52,467.11 and $8,014.31, respectively. Due to concessions, the sole issue for decision is whether transfers of certain real properties were, in substance, a sale or a section 1031 nontaxable exchange. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. *221 Juhl and Vera Smith, husband and wife, resided in Cozad, Nebraska, at the time of the filing of their petition. They filed joint Federal income tax returns for the taxable years 1968 and 1969 with the Internal Revenue Service Center, Kansas City, Missouri. Prior to 1968, Juhl Smith (hereinafter petitioner) and his brother, Robert, each owned an undivided one-half interest in approximately 120 acres of irrigated crop land located in Dawson County, Nebraska. Petitioner's basis in the Dawson County property was $9,500. Robert farmed and operated a cattle-feeding operation on the Dawson County land. For the use of his interest in the land, Robert paid petitioner rental income under a crop-sharing arrangement. On April 8, 1968, petitioner purchased 640 acres of grazing land in nearby Custer County at a total cost of $49,600 or $77.50 per acre. Petitioner and Robert wanted to discontinue their co-ownership of the Dawson County property and sought advice of counsel as to how this could be accomplished without paying income taxes. On March 24, 1969, petitioner conveyed 516 acres of the Custer County land to his brother, Robert, for $40,000, or $77.50 per acre. At that time, there was *222 an oral understanding that the 516 acres in Custer County would be traded in the future to petitioner for his one-half interest in the Dawson County land. There were no written agreements between the brothers relating to the reconveyance of the Custer County land. An agreement entitled "Real Estate Exchange Agreement" dated April, 1969, was executed by the brothers and their wives. Pursuant to the exchange agreement, warranty deeds were executed and delivered on April 25, 1969, whereby petitioner conveyed his undivided one-half interest in the Dawson County land to Robert and Robert conveyed the 516 acres in Custer County to petitioners. The conveyances were recorded on April 28, 1969. In his statutory notice of deficiency, the Commissioner determined that petitioner realized a net longterm capital gain of $15,250 on the sale of his undivided one-half interest in the Dawson County property. OPINION Petitioners claim that the substance and form of the transfers constituted a tax-free exchange of like kind properties within the meaning of section 1031 (a) of the Code. [2] Respondent determined that the substance of the transfers amounted to a sale by petitioners of their one-half *223 interest in the Dawson County property. Appeal from our decision lies in the Eighth Circuit and consequently we consider Century Electric Co. v. Commissioner, 192 F.2d 155 (8th Cir. 1951), affg. 15 T.C. 581 (195)8, cert. denied 342 U.S. 954 (1952), to be controlling. In determining whether a sale and leaseback should be treated as a sale or an exchange, the Court in Century Electric at 159 stated: In * * * [sec. 1031] Congress was not defining *224 the words "sales" and "exchanges". It was concerned with the administrative problem involved in the computation of gain or loss in transactions of the character with which the section deals. Subsections 112(b) (1) and 112(e) indicate the controlling policy and purpose of the section, that is, the nonrecognition of gain or loss in transactions where neither is readily measured in terms of money, where in theory the taxpayer may have realized gain or loss but where in fact his economic situation is the same after as it was before the transaction. See Fairfield S.S. Corp. v. Commissioner, 2 Cir., 157 F.2d 321, 323; Trenton Cotton Oil Co. v. Commissioner, 6 Cir., 147 F.2d 33, 36. * * * [Emphasis added.] Examination of the taxpayer's "economic situation" as a legislative objective is, we believe, the ultimate test. In Portland Oil Co. v. Commissioner,109 F.2d 479, 488 (1st Cir. 1940) the Court said: It is the purpose of Section 112(b)(5) to save the taxpayer from an immediate recognition of a gain, or to intermit the claim of a loss, in certain transactions where gain or loss may have accrued in a constitutional sense, but where in *225 a popular and economic sense there has been a mere change in the form of ownership and the taxpayer has not really "cashed in" on the theoretical gain, or closed out a losing venture. * * * In an examination of the substance of a series of transactions, it is clear that for a series of steps to be collapsed into a single transaction each step must be related to another step by design. An underlying intent renders each step dependent upon and related to another step. Under Century Electric Co.,supra, the taxpayer's intent dictated the point at which certain acts became but steps in a single transaction: The transaction here involved may not be separated into its component parts for tax purposes. Tax consequences must depend on what actually was intended and accomplished rather than on the separate steps taken to reach the desired end. The end of the transaction between the petitioner and the college was that intended by the petitioner at its beginning, namely, the transfer of the fee in the foundry property for the 95-year lease on the same property and $150,000. [ *226 192 F.2d at 159.] The record clearly shows that petitioner's March 1969 sale of the Custer County property to his brother, Robert, was accompanied with an oral understanding that there would be a future exchange of properties. There is no evidence, however, of an intended exchange prior to the March 1969 transfer. There is likewise no evidence that petitioner's purchase in April 1968 of the Custer County property was motivated by an intended subsequent exchange. Accordingly, in determining whether petitioner "cashed in" as a result of the transactions in question or whether there was a change in his "economic situation," we do not consider his payment of $40,000 for the Custer County property as being within the steps of the alleged exchange. Consequently, prior to the purported exchange, petitioner owned a one-half interest in the Dawson County property and owned the entire fee interest in the Custer County property. After the transfers, petitioner owned part of the Custer County property, none of the Dawson County property, and his economic situation was enhanced by $40,000 in cash. We, therefore, find that petitioner sold his one-half interest in the Dawson County *227 property to his brother. The distinguishing features of Alderson v. Commissioner,317 F.2d 790 (9th Cir. 1963), revg. 38 T.C. 215 (1962), and Coastal Terminals, Inc. v. United States,320 F.2d 333 (4th Cir. 1963), affg. 207 F.Supp. 560 (E.D.S.C. 1962), require special comment. The petitioners in Alderson,supra, entered into an agreement to sell Buena Park property to Alloy. Subsequently, the petitioners found certain Salinas property which they desired to exchange for the Buena Park property. Petitioners and Alloy amended the sale agreement to provide for the exchange. At that point, petitioners' daughter, acting as their agent, directed the escrow agents to transfer the Salinas property directly to Alloy and back to petitioners and that the purchase price of the Salinas property would be paid. In concluding that our holding, "that in essence petitioners acquired the Salinas property in a separate transaction," was not supported by the record the Ninth Circuit attached controlling importance to the fact that an exchange was intended from the outset. Petitioners, on finding the Salinas property, took steps *228 to make it available to Alloy for the exchange by signing buyer's instructions in the escrow of August 19, 1957, opened at Salinas Title, but the fact is, as found by the Tax Court, that petitioners at that time intended to accomplish an exchange of properties and that the Salinas property was "acquired by Alloy" for the sole purpose of such exchange. True, the intermediate acts of the parties could have hewn closer to and have more precisely depicted the ultimate desired result, but what actually occurred on September 3 or 4, 1957, was an exchange of deeds between petitioners and Alloy which effected an exchange of the Buena Park property for the Salinas property. It is also noted by the court that the buyer's instructions in the Salinas escrow did not conform to the seller's instructions although the transfer from the original owner of the Salinas property to Salinas Title was, as to the provision at variance, pursuant to the terms of the buyer's instructions. If Alloy had signed the said "Buyer's Instructions" this litigation would have been avoided, but even in the circumstances here involved the court concludes that the intended exchange was accomplished. [317 F.2d at 793.] *229 In the instant case, the record does not support a finding that from the outset, i.e., petitioners' purchase of the Custer County property in April 1968, an exchange was intended. He purchased 640 acres but sold only 516 acres to his brother. The taxpayer in Coastal Terminals, Inc.,supra, held certain options to acquire land upon which it desired to have oil terminals constructed. The taxpayer assigned its options to purchase the sites to Delhi-Taylor with the understanding that Delhi-Taylor would exercise the options, construct the oil terminals and then exchange the constructed terminals for a certain coastal terminal held by the taxpayer. A section 1031 exchange was found. Although the desired exchange was not contemplated until after the taxpayers had acquired the options, just as the intended exchange in the instant case developed after petitioners' acquisition of the Custer County property, was find CoastalTerminals, Inc., distinguishable in that the property to be acquired by Coastal Terminals in the exchange was not held by it prior to the exchange. It held options to acquire land which were clearly different from the improved land sites in every real *230 sense and in terms of like kind property. That is, the options held by Coastal Terminals were not the same "nature or character" of property, sec. 1.1031(a)-1(b), Income Tax Regs., which would eventually be the intended subject of the exchange. The options were personalty rather than the realty acquired in the exchange. See cases cited in 27 Am. Jur. 2d 499 n12; Richardson v. Hardwick,106 U.S. 252 (1882); Commissioner v. Crichton,122 F.2d 181, 182 (5th Cir. 1941), affg. 42 B.T.A. 490 (1940). Whatever consideration flowed to Coastal Terminals for the option was for property other than the property acquired in the exchange. The intervening activities of Delhi-Taylor after the transfer of the options and prior to the exchange, that is, the acquisition of the sites and their improvement, added factors to the initial transfer separate and apart from the intended exchange. On the other hand, petitioners' transfer of the Custer County property served no other purpose than to provide an indirect means for the receipt of cash consideration attributable to the sale of his one-half interest in the Dawson *231 County property. We find, therefore, that under the facts of this case, a sale occurred instead of a nontaxable exchange. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise noted.↩
2. SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT. (a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.--No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.↩