### KAUFMANN v. COMMISSIONER OF INTERNAL REVENUE and four other cases.

#### No. 9854–9858.

United States Court of Appeals Third Circuit.

Argued Feb. 24, 1949.

Decided April 26, 1949.

---

[5] Cone v. West Virginia Pulp & Paper Co., 1947, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849.

Edward Goldberg, Pittsburgh, Pa., for appellants.

Hilbert P. Zarky, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General. Ellis N. Slack, Special Assistant to the Attorney General, on the brief), for appellee.

Before MARIS, WALLER and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

These cases present again the question, much litigated in recent years,[1] as to whether a sale of corporate property which is consummated by the stockholders through the liquidation of the corporation and the subsequent conveyance by them of the corporate property to the purchaser is to be regarded as a sale by the corporation for the purposes of federal income tax.

Columbia Holding Corporation, the corporation with which we are here concerned, was incorporated under the laws of Pennsylvania to hold title to an apartment house in Pittsburgh, Pennsylvania, known as the Center Court Apartments. The stockholders of Columbia were the wife and three daughters of Samuel Hyman. They were also the directors of the corporation. Hyman, the husband and father, was president of the corporation but was neither a stockholder nor a director. In December, 1943, a representative of Louben, Inc. approached Hyman, the president of Columbia, and discussed the possibility of purchasing the apartment house. Negotiations continued until January 22, 1944 when an agreement was signed between the four stockholders of Columbia and Louben for the sale of the property. The contract was signed by Hyman as attorney-in-fact for each of the four stockholders.

The apartment house property was subject to an existing mortgage securing an issue of $120,000 of bonds. The contract of sale provided that the buyer should use its best efforts to obtain a new mortgage for at least $150,000 in which case the sellers would cause Columbia to accept it and to take the necessary steps to cause the outstanding bonds and mortgage to be paid and satisfied and the new mortgage to be executed as a first lien on Columbia's property. The agreement further provided that thereupon the sellers would cause Columbia to transfer the apartment house property to themselves in total or partial liquidation whereupon they were to convey the property to the buyer.

Louben, the purchaser, failed to procure the new mortgage and instead the four stockholders acting as partners borrowed $120,000 from a bank, loaned that sum to

[1] Meurer Steel Barrel Co. v. Commissioner of Int. Rev., 3 Cir., 1944, 144 F.2d 282, certiorari denied 324 U.S. 860, 65 S.Ct. 864, 89 L.Ed. 1417; Com'r v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Fairfield S. S. Corp. v. Commissioner of Int. Rev., 2 Cir., 1946, 157 F.2d 321, certiorari denied 329 U.S. 774, 67 S.Ct. 193, 91 L.Ed. 665; Howell Turpentine Co. v. Commissioner of Internal Rev., 5 Cir., 1947, 162 F.2d 319; Wichita Terminal Elevator Co. v. Commissioner of Int. R., 10 Cir., 1947, 162 F.2d 513; United States v. Cummins Distilleries Corporation, 6 Cir., 1948, 166 F.2d 17; Borall Corporation v. Commissioner of Internal Rev., 2 Cir., 1948, 167 F.2d 865.

Columbia and caused it to use the amount to pay off and satisfy the outstanding bonds and mortgage. Three days thereafter corporate meetings were held at which the four stockholder-directors ordered the liquidation of Columbia by the transfer of its property to themselves as stockholders in cancellation and redemption of their shares. Pursuant to these directions Columbia on the same day conveyed the property, subject to the corporate indebtedness, to the stockholders in cancellation of their shares and on the next day the stockholders in turn conveyed the property to Louben, the purchaser, using part of the purchase money to repay the bank loan of $120,000 which they as partners had made.

The Tax Court, considering the cases in banc, found as a fact that the sale of the Center Court Apartments was the sale of Columbia and not of the four stockholders and, relying upon the decision of the Supreme Court in Commissioner v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, held, six judges dissenting, that the gain realized upon the sale was taxable to the corporation. 11 T.C. 483. After full consideration of the position taken by the dissenting judges of the Tax Court and here strongly urged by the taxpayers we have nonetheless reached the conclusion that the decision of the majority of the Tax Court must be affirmed. We think that this conclusion is inevitable not only on the grounds taken by the Tax Court but also for additional reasons which we shall state.

First. The Tax Court found that the negotiations in this case were begun by Hyman as president of the corporation. We cannot hold that this finding was erroneous since Hyman as president had a fiduciary relationship to Columbia and, therefore, had a legal duty in dealing with its property to do so for its benefit.[2] He

was not called as a witness to testify that he did not do so. It thus appears that the negotiations were initiated by the corporation through its chief executive officer although subsequently cast into the form of an agreement with the shareholders as individuals. Accordingly the case falls squarely within the rule laid down by the Supreme Court in Commissioner v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, even if we accept the rather narrow interpretation of that case made by Judge Learned Hand in Fairfield S. S. Corp. v. Commissioner of Int. Rev., 2 Cir., 1946, 157 F.2d 321, 322, certiorari denied 329 U.S. 774, 67 S.Ct. 193, 91 L.Ed. 665.

Second. The agreement of sale in this case was made by the stockholders before any steps had been taken to liquidate and dissolve the corporation. Therefore, when those steps came to be taken, they were not taken for the purpose of liquidating the corporation in the ordinary way but solely for the purpose of carrying out the sale of the corporate property to the purchaser under the then existing contract. It follows that in the liquidation the stockholders were mere conduits through which the title to the property passed to the purchaser previously agreed upon. See Commissioner v. Court Holding Co., 1945, 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981. We do not think that such a transaction constitutes a nontaxable distribution in liquidation within the meaning of Section 29.22(a)-20 of Treasury Regulation 111.[3]

Third. The four stockholders who executed the agreement to sell the corporate property in this case were also the directors of the corporation. Therefore, in dealing with the corporate property they were under a legal duty to do so on behalf of the corporation and for its benefit.[4] For these directors to have dealt with the cor-

[2] 13 Am.Jur., Corporations § 997; 3 Fletcher Cyclopedia Corporations § 838. The Pennsylvania Business Corporation Law, § 408, 15 P.S.Pa. § 2852—408, provides as follows: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in their personal business affairs."

[3] Title 26, Part 29, Code of Federal Regulations, § 29.22(a)-20.

[4] 13 Am.Jur., Corporations § 997; 3 Fletcher Cyclopedia Corporations § 838; Pennsylvania Business Corporation Law, § 408, 15 P.S.Pa. § 2852—408; Luther-

porate property for their own individual benefit, whether as stockholders or otherwise, would have been a clear breach of that duty particularly where, as here, there were other persons, the bondholders, whose rights were involved.[5] Under such circumstances a court of equity would regard the transaction as entered into for the benefit of the corporation even though cast in the form of a sale for the individual benefit of the directors.[6] In the present case, however, there is even more to stamp the agreement which the stockholders made as one made for Columbia. For, as has been pointed out, they contracted to cause Columbia itself to take a number of the actions necessary to carry out the transaction, thus bringing it directly into the transaction.

The taxpayers strongly urge that the opposite conclusion must be reached because of the fact that under the provisions of the supplemental mortgage indenture securing the issue of bonds which were outstanding at the time of these transactions Columbia was prohibited from selling its property. We find, however, as the majority of the Tax Court held, that there was no such absolute prohibition. On the contrary the prohibition was merely against selling the property so long as the bonds were outstanding. There was nothing to prevent Columbia from agreeing to sell the property if at the time of sale provision was made for the payment of the bonds. Indeed that is substantially what was actually done.

In the case of small closely held holding corporations such as this there is frequently a tendency on the part of the stockholder-directors who own and control the corporation to regard the corporate property as to all intents and purposes their own and to deal with it as such whenever it pleases them. It may be well to point out, however, that the corporate cloak cannot be put on and taken off quite so casually. When individuals organize a holding corporation and become its directors and officers as well as its stockholders they assume the responsibilities and obligations which the law imposes upon corporate directors and officers and at least so long as the corporation continues and they remain its directors and officers those obligations continue whether they will it or not. They may not wholly ignore their corporate responsibilities merely because it suits them better for tax or other purposes to act as proprietors rather than as fiduciaries.[7]

As stated, our conclusion is that the Tax Court was right in finding that the sale of the Center Court Apartments to Louben, Inc. was the sale of Columbia Holding Corporation and taxable as such. In this conclusion we are supported by our own earlier decision in Meurer Steel Barrel Co. v. Commissioner of Int. Rev., 3 Cir., 1944, 144 F.2d 282, certiorari denied 324 U.S. 860, 65 S.Ct. 864, 89 L.Ed. 1417, and by the decision of the Court of Appeals for the Tenth Circuit in Wichita Terminal Elevator Co. v. Commissioner of Int. R., 1947, 162 F.2d 513. Howell Turpentine Co. v. Commissioner of Internal Rev., 5 Cir., 1947, 162 F.2d 319, upon which the dissenting judges of the Tax Court and the taxpayers here strongly rely is distinguishable on its facts.

The decision of the Tax Court will be affirmed.

land, Inc., v. Dahlen, 1947, 357 Pa. 143, 151, 53 A.2d 143, 147; Pepper v. Litton, 1939, 308 U.S. 295, 306, 307, 60 S.Ct. 238, 84 L.Ed. 281.

[5] 13 Am.Jur., Corporations § 998; 3 Fletcher Cyclopedia Corporations § 884;

Ashman v. Miller, 6 Cir., 1939, 101 F.2d 85, 90, 91.

[6] Commonwealth Title Ins. & Trust Co. v. Seltzer, 1910, 227 Pa. 410, 76 A. 77, 136 Am.St.Rep. 896.

[7] Higgins v. Smith, 1940, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406.