*Decisions will be entered under Rule 50.*

E. D. GENSINGER, TRANSFEREE OF COLUMBIA RIVER ORCHARDS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33288. Promulgated April 25, 1952.

*A. R. Kehoe, Esq.,* for the petitioner.
*John N. Pigg, Esq.,* for the respondent.

### OPINION.

MURDOCK, *Judge:* The petitioner stipulated that he received assets sufficient to make him liable as a transferee for the deficiencies, the additions to the tax and all interest imposed by law. His only defenses are that the transferor did not owe the taxes and the additions thereto, and the period of limitation on assessment against and collection from the petitioner had expired prior to the date of the mailing of the notice of transferee liability. The latter question may depend upon the answer to the tax liability of the transferor and therefore the question of the tax liability of the transferor corporation will be discussed first.

There was a prior proceeding involving alleged tax liability of the corporation and transferee liability of the petitioner for the period

January 1, to July 7, 1943. See *Columbia River Orchards, Inc.*, 15 T. C. 253. It was there held that the correct tax period for the corporation was the full calendar year 1943 and both parties here accept that holding. The petitioner points to a finding of fact in that case that "Immediately after his appointment as liquidating trustee on July 17, 1943, petitioner took possession of the fruit crop produced during the year and thereafter dealt with it in his own name and for his own account as his personal property,"[1] and then states the question, "So assuming that petitioner took possession of the fruit after dissolution and thereafter dealt with it in his own name and for his own account as his personal property, can the sales of that fruit crop be considered as sales of the corporation for tax purposes?" He says in his reply brief "It is quite clear under these facts that the process of dissolution of the corporation began at the time of the adoption of the first resolution of dissolution on May 31, 1943, and Petitioner took possession of the assets of the corporation for his individual account in orderly procedure, terminating with the transfer of the orchard land itself on October 11, 1943. Petitioner took the fruit crop as a distribution in dissolution prior to the time it was delivered to the Co-op for ultimate sale."

Section 3803-48 of Remington's Revised Statutes of the State of Washington referred to in the resolution dated May 31, 1943, provides that a corporation may be voluntarily wound up and dissolved by proceedings conducted out of court. Section 3803-49 provides that voluntary proceedings for dissolution may be instituted whenever a resolution therefor is adopted by the holders of at least two-thirds of the stock at a shareholders' meeting called for the purpose, and in case the resolution provides that the affairs of the corporation shall be wound up out of court it must designate a trustee to conduct the winding up, but his

* * * appointment shall not be operative until

a. duplicate copies of such resolution have been signed and acknowledged by a majority of the directors or by shareholders holding a majority of the voting power of all shareholders, and

b. one of such copies has been filed for record in the office of the Secretary of State and the other copy filed in the office of the Auditor of the county in which the corporation has its registered office.

Section 3803-52 describes the powers and duties of a trustee appointed by the shareholders to conduct the winding up out of court. It provides that he shall, as soon as his appointment has become operative as provided in section 3803-49, collect all amounts due the corporation, sell and convert into cash all corporate assets, and out of the

---

[1] Nothing decided in that case depended upon that finding. Other findings in that case show that it could not and did not refer to fruit already delivered to Skookum. Res judicata as to any fact is not pleaded or applicable. *The Evergreens*, 47 B. T. A. 815, affd. 141 F. 2d 927.

sums so realized pay off debts and liabilities of the corporation and pay any surplus to the shareholders.

The record does not show that an acknowledged copy of the resolution dated May 31, 1943, was filed in the office of the Secretary of State or in the office of the Auditor of Chelan County where the corporation had its registered office. The clear inference is that they were not acknowledged or filed. A copy of the resolution of July 17, 1943, was filed in the office of the Secretary of State of Washington on July 19, 1943, and a copy was filed in the office of the Auditor of Chelan County on July 20, 1943. Thus, assuming that both copies were acknowledged as required by law, the appointment of the petitioner as trustee to wind up the affairs of the corporation could not have become operative as provided by the law of Washington prior to July 20, 1943. The resolution of May 31, 1943, unlike the resolution of July 17, 1943, set no time for the actual liquidation or for the winding up of the business of the corporation. The corporation continued to operate in the usual way for some time after May 31, 1943. The petitioner had not intended to have the liquidation take place until July 7, 1943, a date picked by him because it would be after the cherry crop had been harvested and before the apricot crop would have been harvested. He intended that the corporation should deliver, and it did deliver, its 1943 cherry crop to Skookum in the ordinary course of its business. It was understood between the petitioner and the manager of Skookum in their conversation of July 1, 1943, that the 1943 cherry crop was not included in the fruit which the petitioner wanted Skookum to handle for his personal account. The petitioner had to delay the adoption of the resolution of dissolution from July 7 to July 17, 1943, because his lawyer was slow in preparing it. The evidence does not show why two resolutions were adopted, why the earlier one mentioned no definite date for dissolution or why copies of it were never filed, but the earlier one resulted in no immediate change in the operation of the business of the corporation and no actual distribution in liquidation could have been made under the cited laws of Washington earlier than July 20, 1943.

The petitioner's counsel argues that the "petitioner took possession of the crop after dissolution." The meaning of that statement is not clear. The petitioner as liquidating trustee had no right to interfere with the usual conduct of the business of the corporation, at least until July 20, 1943, and the corporation was not actually dissolved until May 24, 1944. He would have to discharge all obligations of the corporation before taking its assets in dissolution. A finding was made in the prior proceeding that "all corporate obligations were paid on or before July 15, 1943." Nothing decided in the

prior case depended upon that finding. The record in that case, which was also made a part of the record in this case, shows that large obligations of the corporation to RACC were outstanding until they were discharged in August 1943 by the payment by Skookum to RACC of the proceeds of the sales of apricots from the Columbia River Orchards property. The resolution of July 17, 1943, was not intended to effect, and it did not effect under the laws of Washington, an actual distribution of any of the assets of the corporation to the petitioner, its sole stockholder. He formally transferred certain of the assets to himself as distributions in liquidation of the corporation. For example, he transferred the bank account of the corporation to his own new joint bank account on August 3, 1943, and he executed a deed on October 11, 1943, transferring the real estate, tools, equipment, and machinery of the corporation to himself. However, he never executed any document purporting to transfer any of the fruit of the corporation to himself.

He argues that no bill of sale was necessary to transfer the personal property to himself as a liquidating distribution, citing *Marston* v. *Rue*, 92 Wash. 129, 159 P. 111, where the court said that a sale of personal property is good by mere delivery. The cherries had been delivered to Skookum at some undisclosed time prior to July 2, 1942, and may have been sold prior to July 20, 1943. Furthermore, all of the apricots had been delivered to Skookum and some may have been sold prior to July 20, 1943. Once fruit was delivered to Skookum it was mixed with the fruit of other growers and lost its identity so far as a grower was concerned. Thus, on July 17, 1943, and also on July 20, 1943, the rights of the corporation in regard to the apricots already delivered to Skookum had changed from that of ownership of specific fruit to ownership of an undivided interest in the fungible fruit committed to a particular pool, which fruit was then at some undisclosed stage of the usual procedure of Skookum in handling such pools. The petitioner, as trustee, on July 20, 1943, had no apricots to deliver to himself as a stockholder.

The ultimate purpose of the corporation, and of the other growers, in delivering fruit to Skookum was to have that fruit sold by Skookum and the net proceeds distributed to or for the benefit of the growers. The corporation in the ordinary course of its business, prior to July 20, 1943, had consigned all of the cherry and apricot crops to Skookum for that purpose, and the income from the subsequent sales was taxable to the corporation. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331; *Fairfield Steamship Corporation*, 5 T. C. 566, affd. 157 F. 2d 321, certiorari denied 329 U. S. 774. It is not unusual for a sole stockholder to regard the corporate property as, to all intents and purposes, his own to deal with as he pleases, but the corporate cloak can not be put on and taken off casually for Federal

income tax purposes. *Kaufmann* v. *Commissioner*, 175 F. 2d 28, affirming 11 T. C. 483. Instructions given by the petitioner to the manager of Skookum prior to July 20, 1943, would not relieve the corporation of tax on fruit consigned to Skookum by the corporation in the usual course of its operations up to July 20, 1943. The petitioner, as sole stockholder, had no right to that fruit when he gave those instructions. The petitioner, acting as liquidating trustee, never had made an effective transfer of the rights of the corporation in the pools to himself as sole stockholder. He testified that he took over the assets of the corporation subject to its liabilities on July 17, 1943, but that conclusion is not supported by any act other than perhaps his mental process. There is no evidence that he ever communicated with RACC in regard to releasing the corporation from its obligations to RACC or to transferring the equity of the corporation in any crop to himself in liquidation of the corporation. Furthermore, as has already been mentioned, he had no authority under the law of Washington to do anything towards distribution of the assets of the corporation until his appointment as liquidating trustee became operative on July 20, 1943. The evidence does not indicate that the petitioner took any effective step to transfer the interest of the corporation in any pool to himself.

All expenses and other charges incident to the operation of the business of the corporation, consisting largely of expenditures incident to the raising and marketing of the various crops up to the time that they were delivered to Skookum, were recorded on the books of the corporation and taken as deductions on the return filed for the corporation for the period January 1 through July 7, 1943, but no part of the proceeds of the sales of the 1943 crops was reported as income of the corporation for that period, although Skookum issued checks to RACC for all of the proceeds of the cherry sales and $120,-390.02 of the proceeds of the apricot sales in payment of loans to the corporation secured by mortgages on its property. Obviously the return filed for the petitioner does not correctly reflect the income of the corporation from its 1943 activities. The record does not show any of the circumstances under which RACC loaned the money to the corporation, but the loans must have been made much earlier, and payment of such obligations incurred at any time prior to July 20, 1943, would represent receipt of gross income by the corporation. The corporation would not have been relieved of income tax liability on the apricot sales even if the petitioner had actually assumed those obligations by some act prior to the sales. The corporation would thereby have been relieved of the obligation to repay funds borrowed and apparently used to defray deductible expenses of its business. Cf. *Brons Hotels, Inc.*, 34 B. T. A. 376; *Estate of Theodore Ebert, Jr.*, 37 B. T. A. 186.

The Court, after considering all of the evidence, now before it, has concluded that the petitioner has failed to show error in the determination of the Commissioner that the proceeds of the sales of fruit delivered to Skookum prior to July 20, 1943, were income of the corporation.

The situation in regard to the peaches delivered to Skookum after July 20, 1943, is somewhat different. The petitioner's testimony that he took physical possession of that fruit in his individual capacity and thereafter dealt with it as his own takes on some significance which it did not have in so far as it might have been intended to refer to fruit already delivered to Skookum. However, it has not been shown that the proceeds of the sales of such fruit did not inure to the benefit of the corporation or were not income of the corporation.

Peaches from the Columbia River Orchards property were sold in 1943, after July 20. The Commissioner determined that $48,141.27 should be included in the income of the corporation representing the proceeds of sales of peaches from the orchards of the corporation. The petitioner testified that most of the sales of the 1943 crop of peaches made through others than Skookum were of peaches grown in his own orchards which had never belonged to the corporation. However, he gave no closer approximation of what portion was grown in his own orchards and what portion was grown in Columbia River Orchards property. He became the owner of the latter on October 11, 1943, and any crop then on the property would go to him along with the realty. He has failed to show, however, that the sales of peaches from the Columbia River Orchards property delivered to Skookum prior to that date did not result in income to the corporation rather than to himself. The vagueness of his testimony in regard to what portion of the peaches came from one property and what from another requires the Court to make an approximation or estimate in which it must bear most heavily upon the petitioner who had the burden of proof. *Cohan* v. *Commissioner*, 39 F. 2d 540. The Court has, therefore, concluded that $20,000 of the proceeds of the sales of the 1943 crop of peaches was income of the corporation and the remainder was not income of the corporation.

The corporation was required by law to file returns for the calendar year 1943, *Columbia River Orchards, Inc.*, *supra*, but it never filed any returns for that particular period. No excess profits tax return for any part of that year was ever filed. The income and declared value excess-profits tax return filed for the period January 1 to July 7, 1943, reporting none of the proceeds of the sales of the 1943 fruit crops, is not the return required by law and did not serve to start the running of the statutory period for assessment and collection of any tax for the calendar year 1943. *Commissioner* v. *Lane-Wells*, 321

U. S. 219; *Paso Robles Mercantile Co.*, 12 B. T. A. 750, affd. 33 F. 2d 653. The notice of transferee liability was not mailed too late.

The petitioner assigns the imposition of the penalties as error in this case but does not refer to them in his briefs filed in this case. However, the parties proposed that their briefs in this case would supplement their briefs in the prior proceeding and the petitioner is apparently relying upon those briefs in so far as the penalties are concerned. It seems appropriate in this case to hold that no part of any deficiency was due to negligence or intentional disregard of rules and regulations, and the failure to file an excess profits tax return was due to reasonable cause and not due to willful neglect since even the Commissioner was confused as to the proper taxable period for which returns were due. The corporation's return was filed for a short period which had nothing to recommend it and the Commissioner determined deficiencies for that same period and also transferee liabilities for those deficiencies. The taxpayer and his advisor were doing what they did do for the tax benefits which they thought would follow. The certified public accountant says he told the petitioner that no excess profits tax return for the corporation was due because the corporation, which was on a cash basis, had sustained a loss and thus did not have sufficient income to require the filing of such a return. He was necessarily speaking of the period for which the income tax return was filed. Where parties with insufficient knowledge of tax laws are operating on such close margins for the tax benefits which they think will be derived, their mistakes might well be regarded as willful neglect. Cf. *Hermax Co.*, 11 T. C. 442, affd. 175 F. 2d 776. However, it seems incongruous to hold the corporation and the petitioner to greater knowledge of the tax law than the Commissioner himself has demonstrated in this case, and because of the peculiar circumstances existing in the case it is held that no penalties are due.

*Decision will be entered under Rule 50.*