H.F. Buhler v. Commissioner.
Buhler v. Commissioner
Docket No. 2922-65.
United States Tax Court
T.C. Memo 1970-151; 1970 Tax Ct. Memo LEXIS 208; 29 T.C.M. (CCH) 650; T.C.M. (RIA) 70151; June 11, 1970, Filed Richard A. Williams and Robert D. Cabe, 2200 Worthen Bank Bldg., Little Rock, Ark., for the petitioner. W. B. Riley and J. C. Linge, for the respondent. TANNENWALD
Memorandum Finding of Fact and Opinion TANNENWALD, Judge: In the statutory notice, respondent determined a deficiency of $4,148.99 in petitioner's Federal income taxes for 1961. All the issues raised in the petition have been settled. However, in his amended answer, respondent pleaded an increased deficiency in the total amount of $19,681.94, based upon the assertion that, during 1961, petitioner received in a corporate liquidation an account receivable in the face amount of $71,056.96. 651 Petitioner, an individual, had his legal residence in Little Rock, Arkansas, on the date the petition herein was filed. He filed his income tax return for 1961 with the *209 district director of internal revenue at Little Rock, Arkansas. Fourche River (hereinafter Fourche) is a corporation all of whose authorized and outstanding stock as of December 20, 1961, except for a few qualifying shares, was owned by petitioner. As of December 20, 1961, petitioner owed Fourche $41,642.79. Time Corporation (hereinafter Time) is a corporation organized in 1958. At all times pertinent, petitioner held 298 of its 300 shares of authorized common stock. On February 25, 1958, petitioner deeded 15 acres of land to Time. Time subdivided this land into 44 lots and, by December 20, 1961, had sold 31 of these lots. Fourche acted as selling agent and financed the development. On or about November 27, 1961, Time transferred, by gift, the remaining 13 lots to Hendrix College. Time kept its books, accounted for its income, and reported its income for tax purposes on the accrual basis. The only records kept regularly were detailed deposit slips and checks, with annotations on the check stubs. An accountant (hereinafter Van Duyse) occasionally came in to bring the books up to date, but as much as six or eight months might elapse between such visits. On December 15, 1961, the *210 stockholders of Time held a stockholders' meeting and voted to dissolve the corporation and surrender its charter. On December 15, 1961, balances on 10 of the 31 sales remained to be paid by the purchasers. These unpaid balances, or the proceeds thereof as collected, were distributed to petitioner and are not in issue herein. On December 20, 1961, Time's stockholders executed a consent to its dissolution. The consent reads as follows: We, the undersigned, being all of the stockholders of record of TIME CORPORATION, an Arkansas corporation with its principal place of business in the City of Little Rock, County of Pulaski, State of Arkansas, having the voting power on a proposal to dissolve, do hereby consent and agree in writing by signing this instrument to the dissolution of said corporation, and we direct that this consent be filed with the Secretary of State for the State of Arkansas, who shall issue a Certificate of Dissolution to be filed with the County Clerk of Pulaski County, Arkansas, whereupon said corporation shall continue as a body corporate for a period of three (3) years from the date of dissolution for the purpose of prosecuting and defending any suits by or against *211 it and of enabling it gradually to settle and close its business, to dispose of and convey its property, and to divide its assets, but not for the purpose of continuing the business for which it was established. During this period of three years the Directors of said corporation shall be trustees thereof, with all the powers and limitations conferred upon such trustees by the statutes of Arkansas. The certificate of dissolution of Time was filed with the Secretary of State of Arkansas on February 1, 1962. After December 20, 1961, Time's only asset was an account receivable from Fourche in the face amount of $71,056.96, which later increased in amount to $75,131.96. Van Duyse did not immediately see any obvious way to treat this receivable and therefore delayed any action on it. He then forgot about it. No entries were made after December 20, 1961, and no formal action was taken with respect to this account receivable. According to Time's balance sheet, its only liability after December 20, 1961 was an unpaid balance of $146,650.00 on a note payable to petitioner. Time transacted no business after December 20, 1961. In 1962, Time filed its final tax return for the period ending *212 December 20, 1961. Sometime in the early part of December 1961, Fourche transferred assets to Hendrix College without apparent consideration. On December 31, 1962, the $75,131.96 then owed to Time by Fourche was written off on Fourche's books. On or about September 14, 1964, the petitioner and two others signed a document which read as follows: ASSIGNMENT WHEREAS Time Corporation was itquidated and dissolved on December 20, 1961, after the conveyance of all of its real property to Hendrix College, and WHEREAS the Board of Directors of Time Corporation intended to convey all of its assets to Hendrix College, and WHEREAS Fourche River Land Company owed Time Corporation the sum of $75,131.96, which indebtedness has never been disposed of by the Board of Directors of Time Corporation, We, as the former members of the Board of Directors of Time Corporation, and acting as Trustee of any assets now 652 owned by Time Corporation, hereby transfer, convey and assign to Hendrix College the indebtedness owed by Fourche River Land Company in the amount of $75,131.96. This document was then delivered to the vice chairman of the board of trustees of Hendrix College. Petitioner *213 was advised by counsel not to pay the $41,642.79 he purportedly owed to Fourche, and not to cause Fourche to pay the $75,131.96 purportedly owed to Hendrix College, until the income tax effect of the various transactions was resolved. He followed that advice. Opinion Respondent contends that the account receivable from Fourche to Time should be taxed to petitioner in 1961 as a distribution in liquidation of Time. [1] Both parties agree that there was no actual distribution of this account receivable in 1961. But respondent contends that it was constructively received in that year. Since he first raised the issue in an amendment to his answer, the burden of proof rests upon him. Rule 32, Tax Court Rules. The issue is purely factual and we have concluded, from our consideration of the record as a whole, that respondent has failed to carry that burden. By the end of 1961, Time had ceased doing business and had divested itself of all assets other than the account receivable herein in question. Also, prior to the end of *214 1961, the stockholders voted, and executed a consent, to dissolve the corporation. But it has long been established that such action does not of its own force effect a distribution of the corporate assets to the stockholders for tax purposes. J. T. Hatfield 32 B.T.A. 1, 3 (1935). The Arkansas law applicable to the period in question clearly establishes that a corporation will continue for three years after the filing of the resolution of dissolution, for the purpose, inter alia, of disposing of its property. 6 Ark. Stat. Ann. sec. 64-805 and sec. 64-806 (1957). Respondent argues that the events of subsequent years show that, by the end of 1961, petitioner had decided that Fourche River would never pay Time. Since petitioner had complete control of both corporations, respondent claims that the account receivable should be considered as forgiven by Time, that the amount of the $75,131.96 indebtedness forgiven should be treated as a cancellation of a $41,642.79 debt owed personally by petitioner to Fourche and a contribution by petitioner of the balance to Fourche's capital. Whether the various inferences which respondent seeks to draw would sustain a contention that *215 the account receivable was distributed to petitioner subsequent to 1961, we need not now decide. Only the year 1961 is before us. In light of the fact that the decision to dissolve was taken so close to the end of the year and the testimony that treatment of the account receivable was delayed and then forgotten, we do not think that the building of inference upon inference can be held to satisfy respondent's burden of proof. Respondent also argues that petitioner's dominant position with respect to Time vested in him the absolute power to cause the dissolution papers to be filed and take the account receivable as his own prior to relies upon Gensinger v. Commissioner, relies upon Gensinger v. Commissioner 208 F. 2d 576 (C.A. 9, 1953), reversing 18 T.C. 122 (1952). But, in that case, the Court of Appeals held that the evidence clearly showed both a present intention on the part of the taxpayer to make the distribution and an actual distribution at the specified time. Here there is no such indication. To the extent that there is evidence of petitioner's intention prior to the end of 1961, it suggests that petitioner intended to cause Time to make a gift of *216 all its assets to Hendrix College. In any event, where a factual issue is involved and where the location of the burden of proof is a critical element, previously decided cases are of little, if any, precedential value. If the burden of proof were on the petitioner herein, we might well hold that he had failed to convince us that the account receivable was not distributed in 1961. But the burden of proof in this case is on the respondent and, on the state of the record before us, we hold that he has failed to show that petitioner constructively received the account receivable during that year. Decision will be entered under Rule 50. 653 Footnotes
1. Respondent concedes, however, that petitioner is entitled to a recovery of capital in the amount of $2,969.92 with respect to such liquidating distribution.↩