T.C. Memo. 1996-190


UNITED STATES TAX COURT


M. BENNETT MARCUS AND MARIA F. MARCUS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8403-94.              Filed April 22, 1996.


<u>Robert C. Forst</u>, for petitioners.

<u>Lisa W. Kuo</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency in

petitioners' 1990 Federal income tax in the amount of $16,532 and

a penalty under section 6662(a)[1] in the amount of $3,306. After

concessions,[2] the issues for decision are:

(1) Whether $37,898 received by petitioners was a tax-free

inheritance under section 102(a) or the proceeds from the sale of

property;

(2) whether petitioners may deduct legal expenses in excess

of the amount allowed by respondent; and

(3) whether petitioners are liable for the accuracy-related

penalty either under section 6662(b)(1) for negligence or

disregard of rules or regulations, or section 6662(b)(2) for any

substantial understatement of income tax.

### FINDINGS OF FACT

Capital Gain vs. Inheritance

Petitioners, Maria F. Marcus (Mrs. Marcus) and M. Bennett

Marcus (Mr. Marcus), were married to each other at all relevant

times. They resided in Anaheim, California, at the time the

petition was filed. Mrs. Marcus' mother, Matilde Parisi Suvich

(Mrs. Suvich), had two other daughters, Gabriella and Claudia

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners conceded respondent's additions to income of $13,026 in miscellaneous income, $2,625 in interest income, and $3,529 in capital gain income from a mutual fund sale. Petitioners also conceded respondent's reduction of automobile depreciation from $4,200 to $2,159.

(collectively referred to hereinafter as the sisters).  Mrs. Suvich died in 1970 in Rome, Italy.  At the time of her death, she owned real property (the property) located in Rome and Trieste, Italy, including an apartment building located in Trieste.  Italian law controlled the distribution of Mrs. Suvich's estate.  Mrs. Marcus believed that Italian law called for a property interest resembling a life estate to first pass to her stepfather, Fulvio Suvich, with the property ultimately passing to the three daughters of Mrs. Suvich in equal shares.[3]

Fulvio Suvich died in Rome, Italy, in 1980.  Gabriella was a resident of Switzerland, Claudia was a resident of Italy, and Mrs. Marcus was a U.S. resident as of August 16, 1980.  After her stepfather's death, disputes arose between Mrs. Marcus and her sisters about whether to sell the property.  At least one of the sisters did not want to sell the property because of a poor real estate market and Italian tax considerations.  Although Mrs. Marcus believed she was entitled to one-third of the property, disputes arose between the sisters as to "who should get what and how much" and "how much should be given to the one and how much

---

[3]  Although respondent argued on brief that Mrs. Marcus inherited one-third of the property in 1970 upon her mother's death, respondent admitted in her answer that Mrs. Marcus inherited through her stepfather's estate.  We do not find the question of which parent Mrs. Marcus inherited through to be pivotal in deciding this case.

to the other".  Mrs. Marcus also was leery of becoming involved in "local arguments" over how the property should be handled.

Mrs. Marcus and her sisters decided to resolve their conflict by entering into an agreement entitled Deed of Family Arrangement (the arrangement) on August 16, 1980.  The arrangement provided that the heirs, defined as Mrs. Marcus' sisters, agreed to pay Mrs. Marcus a portion of the estate (one-third of the net proceeds) when and as it was liquidated.  In return, Mrs. Marcus waived, disclaimed, forfeited, and forwent any interest she might have had in the property.

Pursuant to the arrangement, Mrs. Marcus received $37,898 in 1990 from the sale of some of the apartments in Trieste, Italy.  Mrs. Marcus was not informed of the particulars of the sales; i.e., sale price or number of units sold.  The value of the property at the date of her mother's death in 1970, at Mrs. Marcus' stepfather's death in 1980, and when she signed the arrangement was unknown to Mrs. Marcus.  Petitioners did not include the $37,898 in gross income on their 1990 Federal income tax return.

Attorney's Fees

Mr. Marcus worked as an obstetrician/gynecologist for the Marcus and Staglieno Medical Corp. (the corporation) in 1990.  He was president of the corporation and wrote checks on its behalf. He periodically paid attorneys to defend him in lawsuits brought

against him by former patients. In 1983, a lawsuit was filed by Dianna Dall'Occhio against Mr. Marcus (the Dall'Occhio lawsuit). Mr. Marcus did not carry malpractice insurance at the time of the Dall'Occhio lawsuit. An attorney, John DiCaro (DiCaro), handled the settlement of that lawsuit. Petitioners deducted $10,112 in legal expenses on their 1990 individual Federal income tax return for alleged payments to five attorneys. Petitioners substantiated all of the payments to four of the five attorneys, in the amount of $6,368, by providing copies of canceled checks during the audit of petitioners' 1990 Federal income tax return. Petitioners did not provide respondent with copies of canceled checks made payable to DiCaro. Respondent disallowed the remaining amount which petitioners allegedly paid to DiCaro.

## ULTIMATE FINDINGS OF FACT

As a substitute for a bequest of property and in settlement of all claims which she had against her stepfather's estate, the sisters agreed to pay Mrs. Marcus one-third of the net proceeds from the estate when and as it was liquidated.

Petitioners did not provide any substantiation for the alleged payments to DiCaro.

## OPINION

This case deals with two separate and distinct issues, a capital gain versus tax-free inheritance issue and a substantiation of attorney's fees issue. Should we find for

respondent on either of the two issues, we must decide whether a penalty under section 6662(a) is appropriate.

Capital Gain vs. Inheritance

As evidenced by respondent's admission in her answer and stipulation No. 17, it is undisputed that Mrs. Marcus received $37,898 pursuant to the arrangement. Petitioners allege that the $37,898 was received in lieu of an inheritance from her parents and in settlement of claims against her stepfather's estate. Therefore, under the principles of Lyeth v. Hoey, 305 U.S. 188 (1938), and its progeny, petitioners assert that the $37,898 is excludable from gross income under section 102(a). Section 102(a) states:

> SEC. 102(a). General Rule.--Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

Despite admitting as much in her answer, respondent argues that Lyeth is inapplicable because there was no dispute as to Mrs. Marcus' inheritance.[4] Respondent argues that Mrs. Marcus sold property in 1990 that she had already inherited. Since petitioners have offered no proof as to their basis in the property, respondent argues that the entire proceeds are includable in gross income. The arrangement, according to

---

[4] Respondent, in par. 5(a) of her answer, admits that the arrangement was entered into by Mrs. Marcus as a "substitute for a bequest of property" and "in settlement of all claims * * * against the estate". This admission was inexplicably ignored by respondent at trial and in her briefs.

respondent, was simply an accommodation to relieve Mrs. Marcus of the details of handling the property until it was sold. Consequently, the parties dispute whether the arrangement is more properly characterized as a settlement document by which Mrs. Marcus resolved her claims against her stepfather's estate or as a vehicle that simply facilitated the handling of the property. The parties do not disagree as to the law on this point; however, they have a fundamental disagreement as to the facts.

Respondent further argues that even if the rationale of Lyeth controls, it does not automatically make the cash received in compromise of a claim as an heir a tax-free inheritance. Although the settlement of a claim for a portion of the corpus of an estate is excludable from an individual's gross income, the settlement of a claim for lost income results in gross income to the individual. Lyeth v. Hoey, supra; Parker v. United States, 215 Ct. Cl. 773, 573 F.2d 42, 49 (1978); Delmar v. Commissioner, 25 T.C. 1015, 1021 (1956). Respondent fails to fully develop this alternative argument; she apparently believes that petitioners have not shown that any claims compromised were solely for a share of the property.

Respondent's final argument is that the arrangement, by using an amount contingent on the future sale price of the property, necessarily contains the potential for an appreciation component that would not be a tax-free inheritance. This

argument adopts the rationale of the Court of Claims in Parker v. United States, supra, discussed infra.

It is petitioners' burden to show that the $37,898 should be excluded from gross income. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Exclusions from income are narrowly construed: "Accordingly, any funds or other accessions to wealth received by a taxpayer are presumed to be gross income and are includable as such in the taxpayer's return, unless the taxpayer can demonstrate that the funds or accessions fit into one of the specific exclusions created by the Code." Getty v. Commissioner, 913 F.2d 1486, 1490 (9th Cir. 1990) (citing Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-431 (1955)), revg. 91 T.C. 160 (1988). "We agree that the taxpayer bears the burden of establishing that proceeds of a settlement are what the taxpayer contends them to be, in this case property rather than income from property." Id. at 1492.

Resolution of the first issue depends on, among other facts and circumstances, the motivation of Mrs. Marcus when she entered into the arrangement.[5] If it was entered into by Mrs. Marcus as a compromise of her claims as an heir against the estate, then the principles established by Lyeth v. Hoey, supra, and its

---

[5] We note at the outset that the record contains no evidence that we are dealing with a distribution of capital from an estate which has already reported the gain or loss from the sale of the property or that Mrs. Marcus' sisters reported such gain or loss on their individual tax returns.

progeny will apply. The Supreme Court in <u>Lyeth</u> established the doctrine whereby proceeds received in compromise of a dispute are characterized for tax purposes in accordance with the nature of the claims which were compromised. In order to have <u>Lyeth</u> control, there must be a compromise of a disputed claim by the estate or its heirs, as opposed to a voluntary rearrangement of property interests amongst heirs. The U.S. Court of Appeals for the Ninth Circuit, to which this case would be appealable, considered this question in <u>Commissioner v. Estate of Vease</u>, 314 F.2d 79 (9th Cir. 1963), revg. and remanding 35 T.C. 1184 (1961).

In <u>Estate of Vease</u>, the decedent's father died 18 months after executing a will and very shortly after informing his attorney of modifications he wished to be made to it. The attorney incorporated these modifications into a new will, which the decedent's father did not have an opportunity to execute before he died. Shortly after the father's death, his attorney met with his widow and children, including the decedent. The attorney told the family that there was an executed will and an unexecuted will but did not reveal the contents of either document to the family members. The family decided unanimously to abide by the father's last wishes as expressed by the terms of the more recent, unexecuted will.

The executed will provided for specific bequests to the decedent with 20 percent of the residue of her father's estate to

be placed in a trust from which she was to receive the income annually, the principal to be distributed to her when she attained the age of 30. The unexecuted will made no specific bequests to the decedent, but provided that 25 percent of the residue of the father's estate was to be placed in trust from which she was to receive the income for life. The principal of the trust was never to be distributed to the decedent.

The issue in Estate of Vease was whether the decedent's income interest in two trusts[6] resulted from a transfer of property by the decedent during her lifetime, as the Commissioner argued, or whether the trusts resulted from the transfer of assets by the decedent's father's estate, due to the decedent's standing as an heir, as the estate argued.

The Tax Court held that the decedent received her life estate in the trusts by reason of her standing as an heir, relying on Lyeth. The Court of Appeals for the Ninth Circuit disagreed, finding that Lyeth did not control:

> One who has standing as an heir by intestacy, or as a beneficiary under a previous will, may make such standing the basis for a challenge of the will as a whole, or a claim with regard to some provision thereof. Property received from the estate in settlement of a bona fide challenge or claim of this kind, in whatever amount and however conditioned as to disbursement or otherwise, may properly be said to be received by reason of such standing. Lyeth v. Hoey and

---

[6] Litigation subsequent to the father's death established two trusts rather than the single trust contemplated by either of the wills.

the cases decided in accord with it are all instances of this kind. * * *

The basis of the family agreement was therefore not the standing of an heir or heirs to contest the will as a whole, or of a beneficiary under a previous will to question a provision of a later will. Rather, it was the standing of each, as a beneficiary under the executed will, to agree upon a disposition of the property bequeathed and devised to all of them thereunder in a manner different from that provided in the will.

The resulting agreement was nothing more than a voluntary rearrangement of property interests acquired under an admittedly valid will, concluded without duress of unsatisfied claims. * * * [Commissioner v. Estate of Vease, supra at 86-87; emphasis added; fn. ref. omitted.]

There is evidence in the record to support both interpretations, a "bona fide challenge" and a "voluntary rearrangement of property interests". However, we are not forced to choose between them as respondent has, in effect, already conceded this issue in the pleadings in which she admits:

5a. * * * As a substitute for a bequest of property from Fulvio Suvich to Maria F. Marcus and in settlement of all claims which Maria F. Marcus had against the estate of Fulvio Suvich (the "Estate"), his heirs agreed to pay Maria F. Marcus a portion of the Estate when and as it was liquidated. The estate settlement agreement ("Settlement Agreement") was evidenced by a written agreement dated August, 1980. [Emphasis added.]

5b. In 1990, Maria F. Marcus received US $37,898.00 from the Estate pursuant to the Settlement Agreement.

We will not ignore pleadings of fact that are not directly contradicted by the record: "Such admissions of fact are binding upon this Court and the parties to the action." Shea Co. v.

Commissioner, 53 T.C. 135, 158 (1969) (citing Poro v. Commissioner, 39 T.C. 641, 644 (1963)). In a similar situation, the Court of Appeals for the Ninth Circuit has stated: "The allegation quoted was certainly not so incredible as to justify the Tax Court in ignoring the Commissioner's flat admission of it. It was supported by the testimony of the taxpayer's accountant in the prior proceeding." Gensinger v. Commissioner, 208 F.2d 576, 580 (9th Cir. 1953), remanding 18 T.C. 122 (1952). In Gensinger, the Commissioner had admitted in the answer that "'all corporate obligations were paid on or before July 15, 1943.'" Id. at 579. The Court of Appeals stated: "The taxpayer had a right to rely upon the Commissioner's admission, and the record indicates that he did so. We think it was settled on the pleadings that all corporate obligations were paid on or before July 15, 1943, and that the Tax Court was bound to so find." Id. at 580. Petitioners, in the case at bar, likewise relied on the pleadings. Although there is evidence that Mrs. Marcus had a dual purpose when she entered into the arrangement, the admitted allegation that she did so "as a substitute for a bequest of property" and "in settlement of all claims" against the estate is not "incredible"; there is evidence to support the admitted allegation. The Court of Appeals for the Ninth Circuit has given substantial deference to an admission in the pleadings. Handeland v. Commissioner, 519 F.2d 327, 329 (9th Cir. 1975).

Respondent simply ignores the admission rather than seeking to be relieved of it.

The Court of Appeals for the Fifth Circuit has also dealt with this issue; it acknowledges that a compromise of an heir's claim against an estate can resemble an exchange.  However, that Court of Appeals concludes that a dual purpose does not disqualify a compromise from the application of Lyeth v. Hoey, 305 U.S. 188 (1938):

> But all compromises, and therefore all transactions within the potential ambit of Lyeth v. Hoey, are in some measure exchanges.  * * * we have concluded that so long as the settlement is in substantial measure to resolve an underlying and disputed claim based upon a purported gift, bequest, inheritance or the like, what is received in settlement must be characterized, for tax purposes, by the nature of the underlying and disputed claim resolved.  Thus, in circumstances such as those presented by this record, where the rationale of Lyeth is implicated but where, in addition, the transaction resembles a sale or exchange of property, we think that Lyeth governs unless it may be said that the circumstances surrounding the transaction fairly exclude the possibility that the exchange is in reality a compromise of an underlying and controverted claim such as one of gift, bequest or inheritance. [Early v. Commissioner, 445 F.2d 166, 169-170 (5th Cir. 1971), revg. 52 T.C. 560 (1969); fn. ref. omitted; emphasis added.]

As stated above, there is evidence to support the existence of a "controverted claim".  Consequently, we cannot "exclude the possibility that the exchange is in reality a compromise of an underlying and controverted claim".  Respondent has admitted in the answer that the arrangement was entered into as a substitute

for a bequest of property and in settlement of all claims against Fulvio Suvich's estate. Therefore, respondent's first argument fails.

Respondent's argument that even if the rationale of Lyeth v. Hoey, supra, controls, petitioners must still show that the settlement was for lost inheritance and not for lost income is likewise undermined by the same admissions (5a. and 5b.) in her answer. There can be no dispute as to in lieu of what the $37,898 was paid because respondent admits, in paragraph 5b. of her answer, that it was paid "pursuant to the Settlement Agreement" which, when read in conjunction with her admission in paragraph 5a, means it was "as a substitute for a bequest of property". Mrs. Marcus did not settle any claims for lost income; the arrangement made no mention of lost income. The stepfather, having an interest similar to a life estate, had the rights to income from the property during his life. Since the arrangement was entered into in August of 1980, the same year as the stepfather's death, lost income from the property was not an issue. Again, there is evidence to support the admitted allegations.

Respondent's final argument likens the case at bar to Parker v. United States, 215 Ct. Cl. 773, 573 F.2d 42 (1978). In Parker, the plaintiffs, brother and sister, sued various family members on the grounds that the plaintiffs had been improperly

excluded from sharing in the estate of their grandmother, Bertha Segerstrom (Bertha). C.J. Segerstrom (C.J.), the husband of Bertha, was a farmer. He and his wife, Bertha, had eleven children, one of whom was the mother of the plaintiffs. Some years before his death in 1928, C.J. had formed a partnership with four of his sons. The sons continued the partnership after C.J.'s death. By 1944, the partnership was farming about 2,000 acres, all of which were located in Orange County, California. The partnership filed tax returns after C.J.'s death in which Bertha was listed as owning a one-fifth partnership interest. However, Bertha's status as a partner was not recognized by her sons, except possibly for tax purposes. Bertha died intestate in 1944, survived by eight of her children and by the plaintiffs, children of a deceased daughter.

Although the grandmother had died in 1944, the plaintiffs did not discover their possible lost inheritance and file suit until 1964. The 2,000 acres owned by the partnership had dramatically appreciated and were worth about $60 million by 1964. Litigation developed to quiet title to the partnership property. The plaintiffs filed a cross-complaint and sued for a share of the land represented by Bertha's one-fifth partnership interest, $5 million of lost income since 1944, and $10 million of punitive damages.

The suit was settled in 1965; the plaintiffs each received $175,000.  In Parker v. United States, supra at 43-44, the Court of Claims stated:

> The Internal Revenue Service determined that the settlement transaction resulted in the sale or exchange of a capital asset, namely, the taxpayers' "claim" against Bertha's estate, that a substantial amount of capital gain, attributable to the appreciation of the claim over the some twenty years it remained unasserted was thereby realized, and that this gain amounted to 75 percent of the settlement proceeds.

The plaintiffs paid the income tax deficiencies asserted by the IRS, filed claims for refund which were disallowed, and then filed a petition in the Court of Claims seeking a refund under the doctrine of Lyeth v. Hoey, supra.

The Court of Claims, citing Lyeth, framed the issue as "In lieu of what did Marilyn and Robert [the plaintiffs] receive $350,000 in settlement of their cross-complaint against the other members of the Segerstrom family."  Parker v. United States, supra at 47.  The court eliminated the claim for $10 million of punitive damages from consideration since the plaintiffs conceded the issue at settlement.  Aided by appraisals of the land in 1944 and 1965, the court calculated the 1965 value of the plaintiffs' claim to a 1944 inheritance of real property by applying an appreciation factor of 500 percent.  The court found the 1965 adjusted land value to be $290,000.  The court found the plaintiffs' demands for lost profits to be inflated and

fictional.  Accordingly, rather than applying a ratio of land value to alleged lost profits, the court concluded:

> [The] more reasonable choice is to subtract the adjusted land values [$290,000] from the total settlement proceeds [$350,000] and treat the remainder [$60,000] as compensation for allegedly lost income. By this calculation, $290,000 of the settlement proceeds would have been received in lieu of the ownership interests asserted in the real property, and the remainder of $60,000 would be attributable to the claimed compensatory damages for lost income.  [Id. at 50-51.]

The court then separated the $290,000 received for the interest in land into an appreciation component and an original 1944 value component.  The original value component was excluded from income under section 102, as interpreted in Lyeth v. Hoey, supra.  The  appreciation component was taxable since "this remaining amount was received in lieu of the rather spectacular appreciation of the properties over the 21-year period between the date of death and the date of settlement."  Parker v. United States, supra at 51.  In effect, the court found that the plaintiffs' 1965 settlement encompassed the land's appreciation since 1944.

In our case, Mrs. Marcus made no claim against the estate of Fulvio Suvich for lost income.  Respondent has admitted that the $37,898 was received as a substitute for a bequest of property, thus invoking the rule of Lyeth v. Hoey, supra, and its progeny. However, when Mrs. Marcus entered into the agreement, she did not settle for a sum certain to be paid upon the eventual sale of the

property; she settled for one-third of the net proceeds from the future sale of the property.  If the property increased in value after the death of Fulvio Suvich, Mrs. Marcus would share in the appreciation.  Likewise, if the property decreased in value, Mrs. Marcus would share in its depreciation.  The potential appreciation or depreciation would not be part of an inheritance, or received in lieu of an inheritance, but simply the effect of market forces.  As in Parker v. United States, supra, Mrs. Marcus must show what her basis in the property would have been had she inherited her share (one-third) of the property.

Respondent determined that petitioners failed to establish Mrs. Marcus' basis in the property and that consequently, the entire $37,898 is taxable.  Where the Commissioner has determined in a statutory notice of deficiency that a taxpayer's basis in property is zero, the taxpayer bears the burden of proving basis for the purpose of calculating gain or loss on the sale of the underlying property.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Counts v. Commissioner, 42 T.C. 755, 760 (1964).  That principle applies to this case.  If petitioners cannot establish what Mrs. Marcus' basis would have been had she inherited her share of the property, then the entire amount she received in settlement would be taxable.[7]

---

[7]  Respondent also makes the argument that depreciation, allowed or allowable, would have reduced whatever basis Mrs. Marcus had

(continued...)

Petitioners admitted that they did not know the value of the property when Mrs. Marcus' mother died or when Mrs. Marcus' stepfather died. However, under appropriate circumstances, if the record provides sufficient evidence that the taxpayer has some basis in property, but the taxpayer is unable to prove the exact amount, we can estimate the taxpayer's basis in the property, "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). However, in order for the Court to make such an estimate, we must have some basis in fact upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Mrs. Marcus testified, without objection from respondent, that her sister in Italy, an owner of the property, told her the property had decreased in value from 1970 to 1990. Mrs. Marcus, although not the legal owner of the property, certainly had a beneficial interest in the property pursuant to the arrangement. An owner of property generally is qualified to testify as to the property's value. LaCombe v. A-T-O, Inc., 679

---

[7](...continued)
in the property. This argument is misguided as Mrs. Marcus never had a depreciable interest in the property; her stepfather had a life estate, and upon his death Mrs. Marcus promptly entered into the agreement wherein she gave up all rights to inherit the property. Cf. Currier v. Commissioner, 51 T.C. 488, 492 (1968).

F.2d 431, 433 (5th Cir. 1982).  Consequently, based on Mrs.
Marcus' credible testimony, and bearing heavily against her, we
find that she received $25,000 in lieu of her inheritance.
Therefore, we hold that $25,000 of the amount received pursuant
to the agreement is tax free under section 102, and $12,898 is a
taxable capital gain in 1990.

Attorney's Fees

Respondent disallowed $3,744 of attorney's fees for failure
of petitioners to substantiate them with canceled checks.[8]  All
of the disallowed amount is attributable to alleged payments to
John DiCaro.  At trial, Mr. Marcus testified that he could not
find the checks showing payment to DiCaro because the checks were
lost when he closed up his medical practice.

Petitioners' burden of proving that respondent's
determinations in her deficiency notice are erroneous includes
the burden of substantiation.  See Hradesky v. Commissioner, 65
T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir.
1976).  Deductions are a matter of legislative grace; petitioners
have the burden of showing that they are entitled to any
deduction claimed.  New Colonial Ice Co. v. Helvering, 292 U.S.
435, 440 (1934).  Section 6001 requires taxpayers to maintain

---

[8]  Petitioners' position at trial was that they paid DiCaro
$8,993 in 1990, and they are seeking to deduct the entire
payment.

adequate records from which their tax liability may be determined.  Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989).

Petitioners have failed to establish that they are entitled to the additional deduction for attorney's fees.  They presented no documentary evidence such as canceled checks.[9]  Petitioners failed to call DiCaro as a witness or any other person who could corroborate their claimed payments to him.  Also unexplained is how petitioners managed to have every canceled check to substantiate payments to four other attorneys but could not produce a single canceled check for the claimed payments to DiCaro.  If Mr. Marcus' records were lost closing up his office, why were the only legal fee checks misplaced the ones to DiCaro?  Why didn't petitioners get copies of the canceled checks from their bank?  Under these circumstances, Mr. Marcus' uncorroborated testimony is not sufficient to substantiate the deduction:  "We know of no rule that uncontradicted testimony must be accepted by a court finding the facts, particularly where, as here, the testimony is given by interested parties."  Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964).

---

[9]  Petitioners attempted to enter into the record a "recreated fee statement" from DiCaro's office to show that the fees had been paid, but failed to authenticate the statement by having anyone from DiCaro's office testify.  Also, the recreated statement only purports to show that payments were made, not by whom payments were made.

Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in section 6662(b), including negligence or disregard of rules or regulations. Respondent asserts that the entire underpayment of petitioners' tax was due to negligence or intentional disregard of rules or regulations. Sec. 6662(b)(1). As under the predecessor section covering the addition to tax for negligence, section 6653(a), petitioners bear the burden of proof on the penalty in issue. Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985). "Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, supra. "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalties of section 6662 do not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayers acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether the taxpayers acted

with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners have conceded that they failed to include significant amounts of miscellaneous income, interest income, and capital gain income. Petitioners have offered no evidence that they were not negligent in omitting such items or that they had reasonable cause to do so. Petitioners have offered no evidence that they were not negligent or had reasonable cause to deduct attorney's fees in excess of the amount allowed by respondent or in failing to include any portion of the $37,898 in taxable income. In fact, petitioners' briefs fail to address the negligence issue at all. We cannot be sure that petitioners intended to abandon the issue, but in any case respondent's determination of the applicable penalty must be sustained with respect to the underpayment redetermined herein as petitioners have not met their burden of proof on this matter. Respondent's alternative argument for the substantial understatement penalty is rendered moot by our finding sustaining the negligence penalty.

To reflect the foregoing and concessions of the parties,

Decision will be entered

under Rule 155.